1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LAURA LESKINEN,                         No.  2:18-cv-453-TLN-KJN PS

12            Plaintiff,

13       v.                                  ORDER AND FINDINGS AND
                                             RECOMMENDATIONS ON DEFENDANT'S
14   SONNY PERDUE, Secretary of the United   MOTION FOR SUMMARY JUDGMENT
     States Department of Agriculture,
15
              Defendant.
16

17          Plaintiff alleges claims of sexual harassment, hostile work environment, and retaliation

18   against Defendant in connection with her tenure as an intern with the USDA in 2016.  (ECR No.

19   1.)  Presently before the Court is Defendant's motion for summary judgment.  (ECF No. 40.)

20   Plaintiff opposes (ECF No. 54), and also filed a motion objecting to the authority of magistrate

21   judges to hear dispositive motions (ECF No. 56), a motion requesting further discovery (ECF No.

22   55), and five motions to strike the affidavits of Defendant's supporting witnesses (ECF Nos. 58,

23   59, 60, 61, and 62).[1]

24          After carefully considering the written briefing, the record, and the applicable law, the

25   Court DENIES Plaintiff's ancillary motions, and recommends that Defendant's motion for

26   summary judgment be GRANTED.

27   _____

28   [1] The motion was submitted for decision without oral argument upon the record and written
     briefing pursuant to Local Rule 230(g).  (ECF No. 47.)

                                                1

**BACKGROUND**[2]

In March of 2016, Plaintiff (a student at American River College) applied for a Pathways Internship with the National Agricultural Statistics Service ("NASS"), an agency within the United States Department of Agriculture. Prior to starting, Plaintiff emailed USDA H.R. Specialist Rhonda Gray to request starting her internship at a GS-7 level, due to prior federal employment. Gray submitted Plaintiff's question to Kevin Barnes, Director of Western Field Operations for NASS. Barnes replied: "Since this is a student internship and not a permanent position, I prefer to maintain the offer at GS-5 step 1. Upon successfully performing in her intern position and completing the required 640 hours, she will be eligible for the GS-7 step 1." Plaintiff signed an internship agreement that stated she would be eligible for conversion to a career position after completing a minimum of 640 hours of work in the internship program under a 2 year appointment, and that "eligibility for conversion does not guarantee the agency will decide to opt for conversion." The internship agreement also required Plaintiff to maintain a "half-time course load (2 classes) as defined by the educational institution." American River College defines "half-time" as between 6-11 credits. Plaintiff started her internship on May 18, 2016.

Shortly thereafter, Plaintiff's supervisor Curt Stock told her he wanted to "help" her with her promotion. Stock said the previous intern quit because she didn't want his help. Stock once blocked her from leaving her desk and mentioned again how he could "help" her, and when Plaintiff told Stock that what he was asking was against the rules, Stock replied "hang the rules;" Plaintiff then asked Stock in a loud voice if she could leave, and Stock acquiesced. Later, during Plaintiff's harassment-prevention training, Stock stated "that's not how the real world worked." In July of 2016, after Stock again mentioned "helping" her, Plaintiff stated her belief that all she needed to do was complete 640 hours of work to receive a promotion. Plaintiff did not report any of this conduct to the officer manager, Chris Messer, or any other of Stock's supervisors.

In October of 2016, Stock conducted Plaintiff's performance review, gave her the highest

---

[2] These facts are stated in a light most favorable to the non-moving party—here, Plaintiff. <u>See</u> <u>Estate of Ford v. Ramirez-Palmer</u>, 301 F.3d 1043, 1045 (9th Cir. 2002).

rating (10), and rated her "fully successful" in each of the categories. Plaintiff asked Stock whether this rating was sufficient for promotion, and he replied it was. Stock told her she had reached her 640 hours, and Plaintiff asked about the promotion she believed she was entitled to (allegedly per Barnes). Stock asked her for a hug at this meeting, and that a co-worker once yelled "Bend Over!" when she left Stock's office. Stock then followed up with Angie Hill, H.R Management Analyst in D.C., about the alleged pre-employment agreement. Hill told Stock that Plaintiff was promotion eligible "after a year of time-in-grade as a student." Stock forwarded the email to Messer, who told Plaintiff the GS-7 promotion could be revisited in March of 2017.

In early November, Plaintiff wrote Gray to inquire whether she could drop a class and still remain eligible for the internship. Gray errantly responded that Plaintiff needed to maintain "part-time" status, and suggested Plaintiff contact her institution "to find out if dropping one of your classes would make you less than part-time." Plaintiff then told Gray her school informed her that 1-5 credits was "part-time"; Plaintiff provided Gray with a verification form, which Gray filed in Plaintiff's personnel file. Gray told Plaintiff "everything was ok" with her college enrollment, so Plaintiff dropped a class—leaving her registered as "part-time" but less than "half-time." On November 15, Lor'rie White, Senior Budget and Accounting Tech in Plaintiff's office, informed Messer that it appeared Plaintiff was only enrolled in one class; Messer confirmed this fact with Plaintiff on December 8. When Plaintiff was leaving for the day on the 8th, a co-worker "pointed his backside up in the air" at her. Plaintiff called in sick on Friday, December 9.

On December 12, 2016, Plaintiff left a copy of "Memo of Understanding and Other Issues/Invocation of the No Fear Act" on Messer's desk alleging hostile and sexually-harassing actions by Stock. The following day, Messer (in the presence of Stock and White) terminated Plaintiff from the internship. Messer informed Plaintiff she was being let go because she was registered as less than half-time, in derogation of her employment agreement and federal statutes.

////
////
////
////

After participating in the EEO process, Plaintiff filed the instant complaint, alleging Title VII harassment and retaliation. (ECF No. 1.) Defendant now moves for summary judgment under Rule 56[3], and Plaintiff opposes. (ECF Nos. 40, 56.)

**DISCUSSION**

I.        **Plaintiff's Seven Ancillary Motions**

Prior to reaching the merits of Defendant's summary judgment motion, the Court takes up Plaintiff's objections and miscellaneous motions. This includes: (A) her contention that the Magistrate Judge lacks authority to issue findings and recommendations on motions for summary judgment in pro se cases (ECF No. 56); (B) her request for further discovery in order to support her opposition to Defendant's summary judgment motion (ECF No. 55); and (C) her motions to strike five declarations relied upon by Defendant (ECF Nos. 58, 59, 60, 61, and 62).

A.        **Magistrate judges have authority to issue findings and recommendations on dispositive motions, including summary judgment motions.**

*Legal Standard*

Title 28 U.S.C. § 636 governs the jurisdiction, powers, and temporary assignment authority of Magistrate Judges. The statutes provides:

> (A) a [district] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action . . .;
> (B) a [district] judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A) . . . .

28 U.S.C. § 636(b)(1)(A-B). Rule 72 of the Federal Rules of Civil Procedure, regarding findings and recommendations on dispositive motions, states that "[a] magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial

---

[3] Citations below to the "Rule(s)" are to the Federal Rules of Civil Procedure unless otherwise stated.

matter dispositive of a claim or defense . . .," and that "[t]he magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact."  Rule 72(b)(1) Local Rule 302 for the Eastern District of California states that in Sacramento, the Magistrate Judge is to oversee "all actions in which all the plaintiffs or defendants are proceeding in propria persona, including dispositive and non-dispositive motions and matters."  L.R. 302(c)(21).

*Analysis*

Plaintiff acknowledges that the undersigned has authority to hear Defendant's motion for summary judgment under the local rules, but asserts the local rule runs afoul of 28 U.S.C. § 636 and her right to equal protection under the Fourteenth Amendment to the U.S. Constitution.

Plaintiff is correct that 28 U.S.C. § 636 does not provide authority for magistrate judges to resolve dispositive motions, including motions for summary judgment.  28 U.S.C. § 636(b)(1)(A).  However, in so arguing, Plaintiff conveniently omits reference to section B, which provides explicit authority for a magistrate judge to conduct summary judgment proceedings and submit proposed findings of fact and recommendations to a district judge.  See § 636(b)(1)(B); see also United States v. Reyna–Tapia, 328 F.3d 1114, 1118 (9th Cir. 2003) (en banc) (reminding that "certain matters (for example, non-dispositive pretrial matters) may be referred to a magistrate judge for decision, while certain other matters (such as case-dispositive motions [and] petitions for writs of habeas corpus) may be referred only for evidentiary hearing, *proposed findings, and recommendations*.") (emphasis added).  Local Rule 302(c)(21) derives from § 636, and the Ninth Circuit has upheld this allocation of judicial resources in numerous instances.  See Houghton v. Osborne, 834 F.2d 745, 748 (9th Cir. 1987) ("[28 U.S.C. § 636(b)(1)(B)] authorizes a magistrate to submit to the district court proposed findings of fact and recommendations for the disposition of . . . a motion for summary judgment."); see also Flam v. Flam, 788 F.3d 1043, 1047 (9th Cir. 2015) (finding that "a magistrate judge should provide a report and recommendation to the district court [on a remand motion] that is subject to de novo review . . . .").

Thus, in submitting these proposed findings and recommendations to Judge Nunley, the undersigned acts within his authority.  Houghton, 834 F.2d at 748.  Further, Plaintiff's equal protection challenge falls flat, as pro se litigants are not a suspect class.  Wolfe v. George, 486

F.3d 1120, 1126 (9th Cir. 2007); see also Raiser v. L.A. Cnty. Sheriff, 2014 WL 6976211, at *2 (C.D. Cal. Nov. 18, 2014) (rejecting an equal-protection challenge to a local rule prohibiting electronic filing by pro se litigants on rational basis grounds).  Should Plaintiff disagree with this F&R, she may file objections within fourteen days—which the district judge may consider before issuing any dispositive order.  See Rule 72(b)(2) and (b)(3).

### B.    Further discovery is not essential, as the Court reads all facts in Plaintiff's favor and Plaintiff's claims are otherwise legally foreclosed.

*Legal Standard*

Under Rule 56(d), the non-movant to a motion for summary judgment may request additional time to develop facts "essential to justify its opposition."  If shown by affidavit or declaration, the Court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.  Id.  A party invoking this rule "must identify by affidavit 'the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.'"  Sec. & Exch. Comm'n v. Stein, 906 F.3d 823, 833 (9th Cir. 2018) (quoting Tatum v. City & County of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006)).  "The facts sought must be 'essential' to the party's opposition to summary judgment, and it must be 'likely' that those facts will be discovered during further discovery.  Id. (quoting Rule 56(d); Margolis v. Ryan, 140 F.3d 850, 854 (9th Cir. 1998)).

*Parties' Arguments*

Plaintiff requests "[d]iscovery proceed in accordance with [Rule] 56(d)," which the Court construes as a request for a continuance of the summary judgment proceedings due to Plaintiff's asserted need to develop facts essential to her opposition.  (See ECF No. 55.)  Plaintiff states she needs to "address nexus, but/for, state of mind, inferences, disparate treatment, due care and other issues of genuine material dispute," that she asserts will consist of "both documentation and witness testimony that currently is in sole possession of the Defendant."  (Id. at pp. 1-2.)  Plaintiff then lists the documents and depositions she seeks, and generally describes why she wants the depositions and documents.  Id. at pp. 3-4.

Defendant generally opposes, arguing Plaintiff is merely attempting to "forestall" summary judgment. (ECF No. 64-2 at p. 2.) Defendant contends a continuance is unnecessary, given that their motion for summary judgment accepts her factual allegations as true for purposes of the motion, that Plaintiff failed to identify specific facts she hopes to adduce, and that Plaintiff cannot otherwise "rest on the hope of obtaining contradictory admissions from Defendant's declarants." Id. at pp. 2-3.

*Analysis*

The Court was initially concerned with the speed at which Defendant moved for summary judgment. The docket indicates that the district court adopted this Court's findings and recommendations denying Defendant's motion to dismiss in September of 2018, and denied Plaintiff's motion for reconsideration on January 3, 2019. (ECF Nos. 28, 39.) Defendant then filed its motion for summary judgment—complete with 37 exhibits— just four days later, on January 7, 2019. (ECF No. 40.)

However, a close examination of Plaintiff's claims and the record indicate that further discovery will not aid Plaintiff in opposing summary judgment. The Court takes Plaintiff's statements made in her declaration as true, and resolves all inferences in her favor. For example, Defendant's witness Kevin Barnes asserts that Plaintiff never called him on November 14, (ECF No. 40-29), but Plaintiff states in her declaration that she did in fact speak with Barnes on that day (ECF 54-1 at p. 37); thus the Court takes it as true that Plaintiff called Barnes that day. The same holds true for Plaintiff's contentions that Stock and others made particular statements, such as Gray gave Plaintiff incorrect information regarding the internship requirements, and the like. Therefore, Plaintiff's general request to depose Stock, Gray, Barnes and other witnesses is unfounded and unnecessary, and Plaintiff does not indicate any specific information that would affect the Court's findings and recommendations. See Tatum, 441 F.3d at 1100–01 (affirming denial of continuance per Rule 56 where movant failed to identify how the lack of transcripts of multiple witnesses was essential to his opposition); Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 888 (9th Cir. 1996) (affirming discovery denial where movant "listed a number of facts that, even if established, would not have precluded summary judgment").

Further, Plaintiff's general allusions to "pretext" in emails and "defamatory information" in her personnel file are unspecific and will not ward off summary judgment on her retaliation claim. Cf. Stein, 906 F.3d 823, 833 (9th Cir. 2018) (affirming denial of Rule 56(d) motion where the movant "failed to identify with specificity facts likely to be discovered that would justify additional discovery[,]" or how the additional facts would preclude summary judgment, and the evidence sought was "the object of mere speculation[.]"); with Calloway v. Veal, 571 F. App'x 626, 628 (9th Cir. 2014) ("These written requests appear relevant and narrowly tailored. For example, Calloway requested—but apparently never received—his complete medical records. Calloway requested the California Medical Facility's (CMF) contraband watch policy so that he could determine precisely what the written policy was and whether warden M. Veal was responsible for it. Calloway also requested production of other prisoner's claims against the warden and Dr. Andreasen, which might lead to discovery of relevant evidence."). Accordingly, Plaintiff's motion to stay these proceedings is denied.

## C.  Plaintiff's Objections to Evidence/Motions to Strike Declarations

Plaintiff filed five "objection[s] to evidence and motion[s] to strike" concerning certain statements made in declarations relied upon by Defendant in its summary judgment motion.

### 1. *The declaration of Joseph Freuh (and reference to Plaintiff's previous discrimination suit), as an attack on Plaintiff's credibility, is given no weight in these proceedings.*

Defendant filed a declaration from U.S. Attorney Joseph Freuh in support of its motion for summary judgment. (See ECF No. 40-35.) The declaration makes one statement of substance, referring to Exhibit 27, which is a copy of a complaint filed by Plaintiff in an unrelated discrimination case. (ECF No. 40-36 re: *Laura Leskinen v. Diagnostic Pathology Medical Group, Inc.*, Sacramento County Superior Court Case No. 34-2008-00007569 (2009)).

Plaintiff contends the declaration of Joseph Freuh should be stricken as irrelevant under Fed. R. Evid. 401 and 402. (ECF No. 60, objecting to 40-35.) The Freuh declaration cites to a copy of a complaint filed by Plaintiff in California Superior Court in a separate harassment suit. (See ECF No. 40-36.) Plaintiff contends this other lawsuit has "absolutely nothing to do with the

questions at hand." (ECF No. 60 at p. 3.)

Defendant counters that the lawsuit shows Plaintiff's familiarity with retaliation law, arguing that Plaintiff's discrimination suit is a "ploy." (ECF No. 40-1 at p. 6, fn. 6.) Defendant also contends the other suit "illustrate[s] the Supreme Court's justification for demanding a strict causation requirement for retaliation claims;" thus, Defendant requests judicial notice of this complaint (ECF No. 64-3 at p. 2.)

*Legal Standard*

The Court has discretion to strike inadmissible evidence filed in support of a summary judgment motion. Bliesner v. Commun. Workers of Am., 464 F.3d 910, 915 (9th Cir. 2006) (holding a district court did not abuse its discretion when it struck part of an affidavit supporting a Rule 56 motion). Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

*Analysis*

By arguing that Plaintiff has knowledge of discrimination law, Defendant appears to be offering the lawsuit as an attack on Plaintiff's credibility (by asserting that her filing of the instant discrimination suit is nothing more than a "ploy"). Regardless of whether this other lawsuit is relevant to her current claims, the Court places no weight on the existence of the suit in its findings below. Simply, in a summary judgment proceeding, the Court views the facts and resolves all credibility issues in a light most favorable to the non-moving party—here, Plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment[.]"). Thus, the Court assumes the Plaintiff is credible when she asserts facts in her affidavit, and gives no credence to Defendant's assertion that her lawsuit is a "ploy."

> **2.    *The statements made in the four declarations are not clearly and unambiguously inconsistent with the affiants' prior statements.***

Plaintiff contends four other declarations (ECF Nos. 40-3, -21, -33, and -34) are subject to

9

strike under the "sham affidavit rule"—that the declarants' statements made in the declarations "change[d] from previous statements [made by these individuals]." (See ECF Nos. 58, 59, 61, and 62.) Defendant counters that the statements at issue are not inconsistent with prior statements, as each merely provides the Court with additional context concerning the affiants' knowledge. (ECF No. 64-3 at pp. 2-4.)

*Legal Standard*

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) This rule "prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony," as it would "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (citations omitted). But the Ninth Circuit has also counseled that the rule should be applied cautiously—as it is in tension with the prohibition against credibility determinations in summary judgment rulings. Id. Thus, in order to strike an affidavit under this rule, the "court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous." Id.; Van Asdale v. Internat'l Game Tech., 577 F.3d 989, 998–99 (9th Cir. 2009).

*Analysis*

The Court cannot find that statements made in the four declarations are inconsistent with prior statements.[4]

---

[4] Setting aside the issues raised in the motions to strike, the Court has a separate, and larger concern. Plaintiff appears resolved to litigate whether Stock and Messer were considering recommending her for a GS-7 promotion in October and November of 2016. The Court assumes, for purposes of this motion, that they were not. Plaintiff also disputes White's knowledge of Plaintiff's harassment allegations around the time of her firing, and the Court assumes in this motion that White was aware. These facts, however, seem irrelevant to Plaintiff's claims, given the Court's reasoning below. Thus, regardless of the Court's findings on these motions, the outcome of Defendant's summary judgment motion would not change.

This brings the Court to its larger concern. Plaintiff, in moving to strike the declarations of five affidavits *in their entirety,* appears to be seeking relief that goes well beyond what the Court would grant. The reason is, even if the Court were to find a "clear and unambiguous"

10

### a.    *Motion to strike Stock (ECF No. 58)*

As to Curt Stock, Plaintiff points to the following statement in his declaration:

-   ECF No 40-21, ¶ 8 (wherein Stock recounts a conversation with Angie Hill, a
    Management Analyst at NASS's D.C. offices), averring that Hill suggested
    Plaintiff could receive a promotion "after a year of time-in-grade as a student."

Plaintiff then attempts to demonstrate an inconsistency in Stock's statement by pointing to:

-   ECF No. 58 at p. 4, a questionnaire given to Stock by the EEO investigator:
    -   Q: What reasons were given to [Plaintiff] why her conversion from the
        (Statistics) program position to a GS-07 full-time position was denied?
    -   A [by Stock]: On November 16, 2016, [Plaintiff], [Messer], and myself
        [Stock] met to discuss where we stood with looking into a GS-7 from the
        email sent on October 20. Requirements were to finish a degree complete
        640 hours at work, complete ag learn courses and have good performance,
        which she currently did. We were going to meet back in March to see
        where we stood after seeing how the January surveys went."

The Court sees no inconsistency between these statements. In a light most favorable to

Plaintiff, it appears Stock knew any discussion of a promotion to GS-7 could happen in March—

regardless of whether Stock became aware of it from Hill or another source. Thus, the Court

declines to strike this statement from Stock's declaration.

### b.    *Motion to strike White (ECF No. 59)*

As to Lor'rie White, Plaintiff points to the following statement in her declaration:

-   ECF No 40-33, ¶ 8, stating "I [White] was unaware of any allegations of sexual
    harassment or any other complaints by [Plaintiff] until after she was terminated
    for failing to maintain her enrollment as a half-time student."

Plaintiff then attempts to demonstrate an inconsistency in White's statement by pointing to:

-   ECF No. 59 at pp. 4-7, a questionnaire given to White by the EEO investigator,
    wherein the investigator inquired into White's knowledge of Plaintiff's
    termination, and where White stated she knew of Plaintiff's placing of a letter on

inconsistency between statements made in the affidavits and prior testimony (which it does not),
the appropriate remedy would be to simply strike the contradictory portions of those affidavits.
See, e.g., Piveg, Inc. v. Gen. Star Indem. Co., 193 F. Supp. 3d 1138, 1147 (S.D. Cal. 2016), aff'd,
710 F. App'x 776 (9th Cir. 2018) (after finding portions of an affidavit to be "manufactured," the
court "strikes *those portions* of the affidavit."). Thus, Plaintiff's motions to strike appear to the
Court to be nothing more than an unfounded attempt to undercut the bulk of Defendant's
supporting evidence by taking umbrage with a small portion of each—these requests are not well
taken.

Messer's desk alleging sexual harassment on December 12.

Plaintiff contends that since she was still employed on December 12, White's declaration is clearly inconsistent with her former statement. However, White also stated to the investigator that "the termination and the report of sexual and non-sexual harassment all occurred around the same time so it was all intertwined." (ECF No. 59 at p. 2, ¶¶ 7-9; <u>see also</u> ECF No. 40-17, indicating the personnel action was filed on December 13.) White also explicitly stated she did not discuss the letter with Messer, and became aware of the details of Plaintiff's allegations on December 14. (ECF No. 59 at p. 6.) The Court sees no clear and unambiguous inconsistency between White's statements, and so declines to strike this portion of her affidavit.

### c. Motion to strike Gray (ECF No. 61)

As to Rhonda Gray, Plaintiff points to the following statement in her declaration:

- ECF No 40-34, ¶ 3, stating "On November 8, 2016, [Plaintiff] sent me an e-mail inquiring whether she could drop one of her college courses and still qualify for the [internship]. I . . . informed her that the [internship] requires an intern to be at least a part-time student as determined by the intern's educational institution."

Plaintiff then attempts to demonstrate an inconsistency in Gray's statement by pointing to:

- ECF No. 61 at p. 4, a questionnaire given to Gray by the EEO investigator:

    o Q: What was said [regarding Plaintiff's requirements for the internship]?
    o A [by Gray]: I informed [Plaintiff] that she needed to check with the institution she attends . . . to determine her enrollment status if she chose to drop a class. For her to remain eligible under the [internship] a student must be considered a half-time or full-time student. [Plaintiff] then stated she would contacted [sic] the institution to check her enrollment status to determine if she would be considered part-time if she dropped a class. I know most institutions . . . only categorize students as full-time or half time, so I assumed when [Plaintiff] told me her institution would consider her to be part-time, she would remain eligible for her internship if she dropped the class.

The Court sees no clear and unambiguous inconsistency between these statements, as it appears Gray is merely attempting to clarify her (seemingly-unfortunate) mistake in informing Plaintiff about her eligibility for the internship program. For purposes of summary judgment, the Court assumes that Ms. Gray misinformed Plaintiff about her eligibility for the program after dropping a class. Thus, the undersigned declines to strike this portion of Gray's declaration.

#### d. *Motion to strike Messer (ECF No. 62)*

As to Chris Messer, Plaintiff points to the following statements in her declaration:

- ECF No. 40-3, ¶¶ 9-10, where Messer states that "On October 21, 2016, Stock forwarded me [Messer] an email from Leskinen, which in turn contained an email dated March 22, 2016 from Kevin Barnes, NASS Director of Western Field Operations."

- ECF No. 40-3, ¶ 10, where Messer states "A promotion to a higher paygrade usually requires at least one year of work at the agency, whereas Leskinen had worked at NASS part-time for five months from May to October 2016."

The implication from these statements is that Messer was aware of Plaintiff's intent to seek a promotion to GS-7 in October 2016, but believed Plaintiff was ineligible for the GS-7 promotion until 2017. Plaintiff then attempts to demonstrate inconsistencies in Messer's statements by pointing to:

- ECF No. 62 at p. 4, a questionnaire given to Messer by the EEO investigator:

    o Q: Did [Plaintiff] speak with you [Messer] regarding her conversion from the [internship] to a GS-07 full-time position being denied?
    o A [by Messer]: No. Not at rating time. But we did have a meeting on 11/16/16 where the requirements were reviewed. She was eligible for a step but not a grade.
- ECF No. 54-1, p. 28, an email wherein Messer tells Plaintiff that NASS was "keeping with our GS-5 intern position . . . [a]nd if everything goes well and you get your hours in you can be non-competitively converted . . . ."
- ECF No. 54-1 at p. 26, where Barnes states Plaintiff would be eligible for GS-7 "upon successfully performing in her intern position and completing the 640 hours . . . ."

The Court declines to strike Messer's declaration, given that this issue hews closer to a credibility determination than "clear and unambiguous" inconsistency. Van Asdale, 577 F.3d at 998–99. The Court assumes (for purposes of this motion) that Messer was aware of Plaintiff's desire for a promotion to GS-7, as evinced by the April 27 and October 21 emails between the two, and that Messer's knowledge about the requirements for promotion were that a "usual promotion" took a year but Leskinen's promotion hinged on her successful completion of the internship and completing 640 hours.

////

*Conclusion to Plaintif's Motions to Strike (Section I.C.)*

For the reasons stated above, the Court finds no "clear and unambiguous" inconsistencies in the portions of the affidavits identified by Plaintiff.  Thus, Plaintiff's motions to strike (ECF Nos. 58, 59, 60, 61, and 62) will be denied.

**II.      Defendant's Motion for Summary Judgment**

*Legal Standard*

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."  Summary judgment (i.e. judgment as a matter of law) is proper when the movant demonstrates no genuine issue as to any material fact exists.  Id.  A dispute is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A fact is "material" if it might affect the outcome of the suit under the governing law.  United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).  A shifting burden of proof governs motions for summary judgment under Rule 56.  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).

Initially, the party seeking summary judgment bears the initial burden of informing the court of the legal basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where the moving party will bear the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.  Id.  Where the moving party will not bear the burden of proof on an issue at trial, the movant may prevail by "merely by pointing out that there is an absence of evidence to support the nonmoving party's case."  Id.  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan Fire & Marine Ins. Co. v.

Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970)).

Then, if the moving party meets this initial burden, the opposing party must establish that a genuine issue as to any material fact actually exists.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  A genuine dispute of material fact can be demonstrated by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B); see also Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) ("The opposing party cannot rest upon the mere allegations or denials of its pleading, but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial.").

In resolving a motion for summary judgment, the evidence of the opposing party is to be believed, and all justifiable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255.  While a "justifiable inference" need not be the most likely or the most persuasive inference, it must still be rational or reasonable.  Id.  Further, a motion for summary judgment may not rely on "the mere existence of a scintilla of evidence" (Anderson, 477 U.S. at 253); evidence that is "'merely colorable' or 'is not significantly probative" (Anderson, 477 U.S. at 249-50); "some metaphysical doubt as to the material facts" (Matsushita, 475 U.S. at 586); or a party's "conclusory statement [regarding] a genuine issue of material fact, without evidentiary support[.]" (Bryant v. Adventist Health Sys./W., 289 F.3d 1162, 1167 (9th Cir. 2002)).

 "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact.

Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

Fundamentally, summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015).

*Analysis*

Plaintiff alleges three theories under Title VII, that (A) her supervisor Stock's actions created a hostile work environment; (B) Stock engaged in quid pro quo harassment by offering to "help her" get a promotion, and (C) Messer fired Plaintiff because she advocated for a promotion and because she reported Stock's harassment. Defendant argues the record shows otherwise.

**A.    Hostile Work Environment**

Title VII of the Civil Rights Act of 1964 forbids an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1); see also Burlington Industries v. Ellerth, 524 U.S. 742, 761 (1998) (employer actions can include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

In order to prevail on a hostile work environment claim, Plaintiff must show, among other things, that the alleged harassment "was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002). The conduct must be "extreme," something more than "the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Brooks v. City of San Mateo, 229 F.3d 917, 927 (9th Cir. 2000) (Title VII is not a "general civility code," and courts do not sit as a "super-personnel department."). The work environment must be both subjectively and objectively perceived as abusive, with a particular focus on issues such as the frequency and severity of the conduct, whether the conduct was physically threatening or humiliating, and the extent to which it unreasonably interfered with a plaintiff's work performance. Campbell v. Hawaii Dep't of Educ., 892 F.3d 1005, 1017 (9th Cir. 2018). Additionally, a plaintiff must show the employer itself is

16

"liable for the harassment that caused the hostile environment to exist." Freitag v. Ayers, 468 F.3d 528, 539 (9th Cir. 2006); see also Campbell, 892 F.3d at 1017 (stating that, assuming *arguendo* that comments are sufficiently severe to create a hostile work environment, the employer may be held liable for the harassing conduct only to the extent that it failed reasonably to respond to the conduct or to the extent that it ratified or acquiesced in it."). The employer's corrective measures must be "reasonably calculated to end the harassment," and the reasonableness of the corrective action will depend on, among other things, the employer's ability to stop the harassment and the promptness of the response. Freitag, 468 F.3d at 539–40 (citing Ellison v. Brady, 924 F.2d 872, 882 (9th Cir. 1991)).

Plaintiff states that shortly after she began her internship, her supervisor Stock told her he wanted to "help" her, and that the previous intern quit because she didn't want his help. (ECF No. 54-1 at ¶18; see also ¶ 21, Plaintiff's recounting of a conversation with another employee about Stock's interaction with the previous intern.) Weeks later, Plaintiff states Stock blocked her from leaving her desk and mentioned again how he could "help" her. (Id. at ¶ 20.) Plaintiff states she told Stock that what he was asking was against the rules, and Stock replied "hang the rules." (Id.) Plaintiff asked Stock in a loud voice if she could leave, and Stock acquiesced. (Id.) Plaintiff states that during her harassment-prevention training, Stock stated "that's not how the real world worked." (Id. at ¶ 22.) Plaintiff states there were "multiple times" in July of 2016 that Stock mentioned "helping" her, but Plaintiff stated her belief that all she needed to do was complete 640 hours of work to receive a promotion. (Id. at ¶ 23.) Plaintiff states Stock asked her for a hug on three occasions (Id. at ¶ 33.), that a co-worker once yelled "Bend Over!" when she left Stock's office (Id. at ¶ 32.), and that prior to her termination in December, another co-worker "pointed his backside up in the air." (Id. at ¶ 45.) Taking these statements as true for summary judgment purposes, the Court is not convinced this amounts to conduct so "severe" or "extreme" as to create a work environment that a reasonable person would consider hostile or abusive. Cf. Freitag, 468 F.3d at 540 (finding severe conduct where "Freitag witnessed inmates masturbating in an exhibitionist manner, oftentimes while they directed verbal taunts and crude remarks at her."); with Westendorf v. W. Coast Contractors of Nev., Inc., 712 F.3d 417, 419 (9th Cir. 2013)

(finding no hostile work environment where a supervisor referred to the plaintiff's duties as "girly work," and a co-worker commented on another woman's breasts, asked whether women "got off" when they used tampons, said "women were lucky because [they] got to have multiple orgasms," and repeatedly told the plaintiff she should wear a French maid's costume).

Further, even assuming arguendo that such conduct may make a reasonable woman perceive a hostile work environment, Plaintiff cannot hold Defendant liable given her utter failure to inform Messer (or anyone else) of this conduct until December 12, 2016—after Defendant determined she was ineligible to continue in the internship due to her dropped course (see Section II.C below). Campbell, 892 F.3d at 1017 ("[T]he DOE may be held to account for the students' actions only if, after learning of the harassment, it failed to take prompt corrective measures that were reasonably calculated to end the harassment."); Burrell v. Star Nursery, Inc., 170 F.3d 951, 955 (9th Cir. 1999) (where there was no indication in the record that anyone witnessed those incidents, or that the plaintiff reported the harassment, employer could not be held liable).

Thus, summary judgment for Defendant on Plaintiff's hostile work environment claim is appropriate.

### B.    Quid Pro Quo Sexual Harassment

To prove actionable harassment under a quid pro quo theory, plaintiff must show that Stock "explicitly or implicitly condition[ed] a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct." Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1054 (9th Cir. 2007). Implicit quid pro quo harassment occurs where a "supervisor's words or conduct would communicate to a reasonable woman in the employee's position" that participation sexual acts is a condition of employment. Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1173 (9th Cir. 2003). Quid pro quo harassment requires a showing that "a supervisor exercising his authority to make critical employment decisions on behalf of his employer takes a sufficiently concrete action with respect to an employee." Id. at 1167. In quid pro quo cases, "the employer may be held vicariously liable under traditional agency law." Id.

Here, Plaintiff has failed to demonstrate her supervisor, Stock, took concrete actions to deny her the promotion to GS-7 or conversion to a career position. Assuming *arguendo* that

Stock made implicit overtures by offering to "help her" with her promotion, the record reflects that Stock did not have the final say in whether to grant or deny Plaintiff's promotion. In October of 2016, Stock conducted Plaintiff's review, gave her the highest rating (10), and considered her "fully successful" in each of the ratings categories. (See ECF No. 40-8.) Plaintiff states she asked Stock whether this rating was sufficient for promotion, and he replied it was. (ECF Nos. 40-21 at ¶¶ 3-4; 54-1 at ¶ 30.) Stock also told her she had reached her 640 hours, and Plaintiff asked about the promotion she believed she was entitled to per an agreement with Kevin Barnes, NASS Director of Western Field Operations.[5] (ECF Nos. 40-21 at ¶ 5; 54-1 at ¶ 33.) Stock then followed up with Angie Hill, H.R Management Analyst in D.C., who told Stock that Plaintiff would be eligible for a promotion "after a year of time-in-grade as a student." (ECF No. 40-23.) Stock forwarded the email to Messer, and Messer told Plaintiff that the GS-7 promotion could be revisited in March of 2017. (ECF No. 40-21 at ¶¶ 9-10.) Thus, the record indicates that Stock had nothing to do with the denial of Plaintiff's promotion, as that decision came from Barnes, Hill, and Messer. Given the evidence in the record, Plaintiff's arguments that Stock used an "alternative pathway" to deny her the promotion are speculative; such speculation cannot ward off summary judgment on Plaintiff's harassment claim. See Holly D., 339 F.3d at 1174 ("In [quid pro quo] cases, . . . we require more than conclusory allegations that the supervisor proposed a sexual liaison and the employee responded to the overtures in order to protect her

---

[5] Plaintiff argues throughout her brief that she had entered into a pre-employment agreement with Defendant to be automatically converted out of her internship and into a career position at a GS-7 level after completing 640 hours of work in the internship. (See, e.g., ECF No. 54-1 at ¶ 33, stating "In my follow-up request to honor my pre-employment agreement . . . .") Plaintiff's contention, however, is not supported by the evidence; Plaintiff's internship agreement explicitly states the internship required 640 hours under a 2 year appointment, and that "eligibility for conversion does not guarantee the agency will decide to opt for conversion." (ECF No. 40-4.) Plaintiff's correspondence with various USDA officials do not demonstrate her employment terms otherwise. For example, Plaintiff leans heavily on an email from Barnes, sent prior to the start of the internship, where Barnes indicates that Plaintiff would be eligible for GS-7 "upon completing the required 640 hours." (ECF No. 40-22.) However, Barnes explicitly also conditions eligibility for the promotion on both the 640 hours and "successfully performing in her intern position . . . ." (Id.) As her intern agreement states (ECF No. 40-4), the internship lasted more than 6 months, and eligibility does not guarantee conversion or a promotion. Thus, any reference to a "pre-employment agreement" is argumentative, conclusory, and unsupported by the record.

employment interests."); see also Ton v. Santa Cruz County, 2014 WL 11515633, at *6 (D. Ariz. Nov. 4, 2014) (granting summary judgment where the plaintiff's supervisor did not abuse his authority to act on his employer's behalf because he did not act at all, and the tangible employment action occurred independently of it.).

### C. Retaliation

The anti-retaliation provision of Title VII states in relevant part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3. In summary judgment proceedings on Title VII claims, the McDonnell Douglas Corp. v. Green burden-shifting framework applies. 411 U.S. 792 (1973); Surrell v. California Water Serv., Co., 518 F.3d 1097, 1105–06 (9th Cir. 2008). A plaintiff must first make out a prima facie case "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." Emeldi v. Univ. of Ore., 673 F.3d 1218, 1223 (9th Cir. 2012). If established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions, after which the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation. McGinest v. GTE Service Corp., 360 F.3d 1103, 1124 (9th Cir. 2004). Regarding causation, the Supreme Court has held that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338, 352 (2013).

Plaintiff appears to make two claims regarding Defendant's retaliatory actions. She indicates at times that Defendant fired her because she pressed Messer, Stock, and Barnes for a raise, a promotion to a GS-7 position, or conversion of her internship into a career position. None of these activities are protected activities under Title VII, as 42 U.S.C.§ 2000e–3 "only protects employees from retaliation for complaining about the types of discrimination it prohibits." Harris v. Treasure Canyon Calcuim Co., 132 F. Supp. 3d 1228, 1246 (D. Idaho 2015) (rejecting Title VII claim for lack of a protected activity where plaintiff alleged she was retaliated against for filing a worker's compensation claim); see Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1412 (9th Cir.

1987) (no protected activity for retaliation purposes where employee raised concerns about his personal success and not about discrimination); see also Barot v. Embassy of Republic of Zambia, 299 F.Supp.3d 160, 188–89 (D.D.C. 2018) (rejecting plaintiff's contention that her requests for a salary increase constituted a protected activity).

However, Plaintiff has successfully made out a prima facie case of retaliation regarding her complaint to Messer regarding Stock's alleged sexual harassment. Plaintiff states that on December 12, 2016, she "left a copy of 'Memo of Understanding and Other Issues/Invocation of the No Fear Act" on Messer's desk alleging hostile and sexually-harassing actions by Stock. (See ECF No. 54-1 at ¶ 47, decl. Leskinen; see also Id. at Ex. I, p. 38, the "No Fear" letter; 40-3 at ¶ 27, decl. Messer.) The following day, Messer (in the presence of Stock and White) terminated Plaintiff from the internship. (See ECF No. 54-1 at ¶¶ 48–49; see also 40-3 at ¶¶ 28-29; 40-17 Ex. 14, Leskinen Request for Personnel Action.) These facts adequately demonstrate a prima facie case of retaliation. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (considering causation in the context of a retaliation claim by reference to the time "between an employer's knowledge of protected activity and an adverse employment action"); see also Nilsson v. City of Mesa, 503 F.3d 947, 954 (9th Cir. 2007) (discrimination complaint was protected activity, adverse action in declining to hire, and hiring authority was aware of discrimination complaint).

The burden then shifts to Defendant to proffer a legitimate, non-retaliatory reason for why Plaintiff was terminated twenty-four hours after she left the No Fear letter in Messer's office. McGinest, 360 F.3d at 1124. Defendant offers such a reason, stating that Plaintiff was in fact terminated from the internship because she failed to maintain the required hours for the internship, as required by the Internship Agreement and federal regulations. See 5 C.F.R. § 362.202 (defining a student, for purposes of Pathways internships, as one ". . . enrolled and seeking a degree (diploma, certificate, etc.) in a qualifying educational institution, on a full or half-time basis (as defined by the institution in which the student is enrolled) . . . ." The Internship Agreement states Plaintiff was to "[m]aintain at least a half-time course load (2 classes), as defined by the educational institution. (ECF No. 40-4, Ex. 1.; see also 40-12, Ex. 9, at p. 2, Internship Handbook, describing eligible participants as those enrolled on a full or half-time

basis.)  Plaintiff's college defines "half-time" enrollment as 6-11 units.  (ECF No. 40-11, Ex. 8.)
On November 15, White informed Messer that it appeared Plaintiff was only enrolled in one
class, a fact Messer ultimately confirmed on December 8.  (ECF Nos. 40-9, Ex. 6, White email to
Messer re: Plaintiff's enrollment; 40-15, Ex. 12, Messer email to Plaintiff; 40-3 at ¶ 24.)  Thus,
Defendant maintains that when Messer verified Plaintiff had dropped a class, leaving her enrolled
less-than-half-time, her termination was required.  (ECF Nos. 40-3 at ¶¶ 24, 25, 28; 40-16, Ex. 12,
Internship Handbook, stating that "Student Trainees who fail to maintain the eligibility
requirements of the USDA Pathways Program must be terminated from the Program."; 40-32 at
¶¶ 3-4, decl. Walker, USDA H.R. Specialist for the Pathways Program.)  Therefore, Defendant is
correct that Plaintiff's termination appears to have been "well underway before she left her
harassment complaint on Messer's desk."  (ECF No. 40-1 at p. 15.)

     Plaintiff argues Defendant's stated rationale is pretextual—that Plaintiff's course-load
"was not a problem until [she] filed a sexual harassment complaint on December 12, 2016."
(ECF No. 54-3 at p. 7, ¶ 9.)  Thus, she argues that but-for her letter to Messer complaining
Stock's harassment, she would not have been terminated.  Nassar, 570 U.S. at 352.

     Plaintiff primarily points to her emails with Rhonda Gray, a human resources specialist
for NASS, for support.  (ECF No. 54-1 at pp. 104–105.)  These emails indicate that in early
November, Plaintiff wrote Gray to inquire whether she could drop a class and still remain eligible
for the internship.  (See Id.)  Gray errantly responded that Plaintiff needed to maintain "part-time"
status, and suggested Plaintiff contact her institution "to find out if dropping one of your classes
would make you less than part-time."  (See Id.)  Plaintiff then told Gray her school informed her
that 1-5 credits was "part-time"; Plaintiff provided Gray with a verification form, which Gray
filed in Plaintiff's personnel file.  (See Id.)  Plaintiff states that Gray told her "everything was ok"
with her college enrollment, so Plaintiff dropped a class—leaving her registered as "part-time"
but less than "half-time."  (See Id.; see also ECF No. 40-34 at ¶ 3 (wherein Gray admits she erred
in describing the half-time requirement as "part-time" when discussing the internship
requirements with Plaintiff.))  Plaintiff states the subject of her enrollment status did not come up
again until December 13, when White asked Plaintiff for a copy of her current college transcripts.

(See ECF No. 54-1 at ¶ 47.)  Plaintiff then disputes a number of pieces of evidence Defendant uses to support its 'legitimate non-retaliatory' argument.  However, none of this appears relevant to the legal framework set forth in Nassar, requiring "but-for" causation.  Simply, federal regulations required her to be enrolled at least half-time at her college, and when she dropped a course in November of 2016, Plaintiff was thereafter ineligible to continue the internship. [6]  Thus, Plaintiff cannot show her "No Fear" letter was the but-for cause of her termination.

_____

[6]  Plaintiff argues that "California office management" (i.e. Messer, Stock, White and Barnes) knew that Plaintiff dropped a class in early to mid-November, as evinced by her emails with Gray.  (See ECF No. 54-3 at ¶ 9.)  However, there is no indication that they were included on Plaintiff's correspondence with Gray, and Plaintiff even indicates she intended to exclude White for fear that White was "hostile" to her.  Thus, the Court takes as true that Messer and White became aware of Plaintiff's dropped class on November 15.  (See ECF No. 40-9, an email to White from D.C. Management Analysyst Hill inquiring on two students' enrollment, including Plaintiff.)  The Court also takes as true the undisputed evidence that Messer, Stock, Gray, and Hill discussed updating the internship agreement so the course requirements were clear and in line with the regulation and handbook.  (See ECF Nos. 40-10 to -13.)  It also appears undisputed that on December 8, Messer and Plaintiff discussed the enrollment requirements, and Plaintiff informed Messer on that day that she had dropped a class.  (See ECF No. 40-14.)

Further, Plaintiff disputes the declarations of Messer, Barnes, and Walker, where each indicate that the decision to terminate Plaintiff happened prior to Plaintiff submitting the sexual harassment letter on December 12.  (See ECF No. 54-3 at ¶¶ 13.1 and 13.2.)  Plaintiff points out that in both Barnes's and Walker's declaration, the pair are vague about when the decision to terminate Plaintiff was—noting the use of "early December."  (See ECF No. 40-29 at ¶ 6; 40-32 at ¶ 4.)  As to Messer's statement that her conversations with Barnes and Walker occurred via telephone "between Thursday, December 8 and Monday December 12," Plaintiff challenges Messer's credibility, given earlier inconsistent statements on unrelated matters.  (See ECF No. 40-3 at ¶ 25, 54-3 at ¶ 13.1); but see Munoz v. Mabus, 630 F.3d 856, 866 (9th Cir. 2010) (finding summary judgment on plaintiff's retaliation claim proper where plaintiff challenged the credibility of the witnesses asserting a legitimate, non-retaliatory reason for the adverse action, but where plaintiff was unable to produce "sufficiently specific and substantial" evidence).  Regardless of the timing, however, it remains undisputed that 5 C.F.R. 362.302 and .303 require at least half-time enrollment (i.e. 6-11 units, per Plaintiff's college), and interns who do not meet this requirement must be terminated.  Plaintiff's conversations with Gray appear to be unfortunate, but nowhere is it shown Gray had the authority to override federal regulations.

Finally, Plaintiff appears to argue throughout her brief that she had entered into a pre-employment agreement with Defendant to be automatically converted out of her internship and into a career position at a GS-7 level after completing 640 hours of work in the internship.  This contention is not supported by the evidence, however, as Plaintiff's internship agreement explicitly states the internship required 640 hours under a 2 year appointment, and that "eligibility for conversion does not guarantee the agency will decide to opt for conversion."  (ECF No. 40-4.)  Plaintiff's correspondence with various USDA & NASS officials do not demonstrate an agreement otherwise.  Thus, when Plaintiff was fired in December, the undisputed evidence shows she was still considered a Pathways intern—and subject to the restrictions thereunder.

23

*Conclusion regarding Defendant's Motion for Summary Judgment (Section II)*

For the reasons stated above, the Court recommends Defendant's motion for summary judgment be granted on all three of Plaintiff's theories (hostile work environment, quid pro quo harassment, and retaliation) alleged under Title VII.

# ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion challenging the jurisdiction of the magistrate judge (ECF No. 56); motion for further discovery (ECF No. 55); and motions to strike (ECF Nos. 58, 59, 60, 61, and 62) are DENIED. It is further RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 40) be GRANTED IN FULL;

2. Judgment be entered for Defendant;

3. The Clerk of Court be directed to close this case.

In light of those recommendations, IT IS ALSO ORDERED that all pleading, discovery, and motion practice in this action are STAYED pending resolution of the findings and recommendations. With the exception of objections to the findings and recommendations, and non-frivolous motions for emergency relief, the court will not entertain or respond to any motions or filings until the findings and recommendations are resolved.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

////

////

24

IT IS SO RECOMMENDED.

Dated:  June 21, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

lesk.453